IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| THE CHARTER OAK FIRE INSURANCE COMPANY, | ) ) ) | CIVIL NO. 13-00558 SOM/KSC |
| Plaintiff, | ) ) | ORDER GRANTING MOTION FOR PARTIAL SUMMARY JUDGMENT |
| vs. | ) ) | |
| ENDURANCE AMERICAN SPECIALTY INSURANCE COMPANY, | ) ) ) | |
| Defendant. | ) ) | |
| _____ | ) | |

**ORDER GRANTING MOTION FOR PARTIAL SUMMARY JUDGMENT**

**I.       INTRODUCTION.**

This motion calls upon the court to determine whether Endurance American Specialty Insurance Company owes VSE Corporation a duty to defend it from state-court claims arising out of an explosion that killed five people.  VSE's insurer, The Charter Oak Fire Insurance Company, moves for summary judgment, asking this court to rule that Endurance owes a duty to defend VSE from those claims.  Charter Oak also seeks a determination that Endurance's insurance policy is "primary" to Charter Oak's insurance policy.  Charter Oak contends that the requested rulings require Endurance to reimburse Charter Oak for money spent defending VSE from such claims, and to provide VSE with a defense going forward.  The court grants Charter Oak's motion with the caveat that any reimbursement obligation is limited to

reasonable defense expenditures, the amount of which the record
does not allow the court to determine.

## II.        BACKGROUND FACTS.

VSE had a contract with the federal government to
destroy seized fireworks.  VSE subcontracted with Donaldson
Enterprises, Inc., to have Donaldson destroy those fireworks.
See ECF No. 23-3.  On April 11, 2011, an explosion occurred where
the fireworks were being stored that killed Bryan Dean Cabalce,
Kevin Donor Freeman, Neil Benjamin Sprankle, Robert Leahey, and
Justin Joseph Kelii.  All five were Donaldson employees who were
in the process of destroying the fireworks at the time of the
explosion.

Four suits were filed in state court arising out of the
deaths of the five Donaldson employees.  The court refers to
these actions as the "Liability Suits."  See ECF Nos. 23-4 to 23-
7.  Each suit asserts similar claims arising out of the same
facts.  Id.  Each of the suits has been removed to federal court.
See Civ. Nos. 12-00373 JMS/RLP, 12-00376, JMS/RLP 12-00377
JMS/RLP, and 12-00391 JMS/RLP.

The complaint filed in connection with the death of
Bryan Dean Cabalce, for example, alleges that, on or about April
8, 2011, Cabalce was killed in an explosion at a storage facility
in which confiscated fireworks were being stored and destroyed.
That complaint alleges that Cabalce was employed by Donaldson,

which had been hired by VSE to store, transport, destroy, and dispose of illegal fireworks that had been seized by the federal government. See ECF No. 23-4, ¶¶ 14-16, 21, PageID # 322. The complaint asserts: 1) that VSE was negligent in a number of ways (Count I); that Thomas E. Blanchard & Associates, hired by VSE to inspect, monitor, and supervise the warehousing, storage, and destruction of the fireworks by Donaldson, was also negligent (Count II); 3) that VSE and Thomas E. Blanchard & Associates were liable for punitive damages (Count III); 4) that Defendants HIDC Small Business Storage, LLC; Hawaiian Island Development Co., Inc.; Hawaiian Island Homes Ltd.; Hawaiian Island Commercial Ltd.; and Ford Island Ventures, LLC, were the owners, lessees, and/or managing entities of the storage facility at which the explosion occurred and were also negligent (Count IV); and 5) that all the defendants were liable "under the theories of strict liability for breach of warranty, defective design, conducting an ultra-hazardous activity, breach of implied warranty of habitability, implied warranty of fitness for a particular purpose, other applicable warranties, respondeat superior, res ipsa loquitur, agency liability, partnership liability, and/or otherwise." ECF No. 23-4, ¶ 51, PageID # 330 (Count V).

Charter Oak, part of the Travelers insurance group, insured VSE under Policy Number P-630-1133x365-COF-11 for the

policy period from January 1, 2011, through January 1, 2012.  See
ECF No. 23-14.  Charter Oak has been providing VSE with a defense
in the Liability Suits.  See ECF No. 23-8.

On or about August 27, 2013, Charter Oak sent a demand
to Endurance that Endurance reimburse Charter Oak for $637,672.98
that Charter Oak said it had paid defending VSE in the Liability
Suits.  See ECF No. 23-12, PageID # 414.  By the time the present
motion was filed, Charter Oak had apparently paid $968,000.  See
ECF No. 22-1, PageID # 255.  By the time the reply memorandum was
filed, that amount may have grown to "nearly $1.5 million."  See
ECF No. 72, PageID # 1031.  The court is not here determining
what Charter Oak actually paid in defending the Liability Suits,
noting only that it claims to have spent a significant amount in
that defense and to be spending more as time passes.

Charter Oak seeks reimbursement of VSE's defense costs
on the ground that VSE is an additional insured under the policy
Endurance issued to Donaldson.  See ECF No. 23-2 (copy of Policy
Number ECC101003708-02 for policy period from November 15, 2010,
to November 15, 2011).  That policy includes Endorsement Number
5, which modifies the policy's Commercial General Liability
Coverage.  Endorsement Number 5 states, "Any person(s) or
organization(s) whom the *Named Insured* agrees, in a written
contract, to name as an additional insured . . . . for the
project specified in that contract . . . . is included as an

4

insured, but only with respect to that person's or organization's vicarious liability arising out of [Donaldson's] ongoing operations performed for that insured." ECF No. 23-2, PageID # 308. There is no dispute that VSE qualifies as an organization that Donaldson agreed in a written contract was an additional insured. According to Endorsement Number 16 to the Endurance policy, the Endurance policy is "primary" to other insurance. See id., PageID # 309.

The Commercial General Liability Coverage included in the Endurance policy provides that, for "occurrences" taking place during the "policy period," Endurance "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." ECF No. 23-2, PageID # 287. The policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Id., PageID # 296. The policy has multiple exclusions from coverage, including one for "pollution." Id., PageID # 289. That exclusion excludes coverage for the following:

> "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" . . . [a]t or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste.

See copy of policy attached to Concise Statement of Endurance, ECF No. 26-9, PageId # 782-83. The policy defines "Pollutants" as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed." ECF No. 23-2, PageID # 296.

On or about August 16, 2012, Endurance "agreed to defend VSE against the [Cabalce] Lawsuit subject to a reservation of rights," noting that "there are significant coverage issues." See ECF No. 23-9, PageID # 393.

On October 17, 2013, Endurance reiterated that it had "previously agreed to defend VSE pursuant to a reservation of rights" and that it would "continue to defend VSE pursuant to a reservation of rights." See ECF No. 23-13, PageID # 417. Endurance reserved the right to withdraw from that defense and seek reimbursement for all funds paid for the defense. Id. Although the record includes statements by Endurance agreeing to defend VSE, Endurance has paid nothing towards VSE's defense.

On August 23, 2013, HIDC Small Business Storage, LLC, a storage facility defendant in the Liability Suits, filed a complaint in state court seeking a declaration that Endurance had a duty to defend and indemnify it under the insurance policy Endurance had issued to Donaldson. See ECF No. 26-11. Endurance filed a third-party complaint in that action against VSE on

6

October 21, 2013, three days before Charter Oak filed the Complaint in the present action. The third-party complaint sought a declaration that Endurance had no duty to defend VSE (First Claim for Relief) or indemnify VSE (Second Claim for Relief) with respect to the Liability Suits. See ECF No. 26-2. On November 25, 2013, about one month after Charter Oak had filed the suit now before this court, VSE filed a counterclaim in state court against Endurance seeking a declaration that Endurance owed a duty to defend and indemnify VSE with respect to the Liability Suits. See ECF No. 26-12, PageID #s 922-29. The record before this court does not indicate the progress of the state-court coverage case since that time.

**III.     SUMMARY JUDGMENT STANDARD.**

Summary judgment shall be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (2010). See Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000). The movants must support their position that a material fact is or is not genuinely disputed by either "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers, or other materials"; or "showing that the

materials cited do not establish the absence or presence of a
genuine dispute, or that an adverse party cannot produce
admissible evidence to support the fact."  Fed. R. Civ. P. 56(c).
One of the principal purposes of summary judgment is to identify
and dispose of factually unsupported claims and defenses.
Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).
Summary judgment must be granted against a party that fails to
demonstrate facts to establish what will be an essential element
at trial.  See id. at 323.  A moving party without the ultimate
burden of persuasion at trial--usually, but not always, the
defendant--has both the initial burden of production and the
ultimate burden of persuasion on a motion for summary judgment.
Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102
(9th Cir. 2000).

         The burden initially falls on the moving party to
identify for the court those "portions of the materials on file
that it believes demonstrate the absence of any genuine issue of
material fact."  T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors
Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp.,
477 U.S. at 323).  "When the moving party has carried its burden
under Rule 56(c), its opponent must do more than simply show that
there is some metaphysical doubt as to the material facts."
Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,
586 (1986) (footnote omitted).

The nonmoving party must set forth specific facts showing that there is a genuine issue for trial.  T.W. Elec. Serv., Inc., 809 F.2d at 630.  At least some "'significant probative evidence tending to support the complaint'" must be produced.  Id. (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 290 (1968)).  See Addisu, 198 F.3d at 1134 ("A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact.").  "[I]f the factual context makes the non-moving party's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial."  Cal. Arch'l Bldg. Prods., Inc. v. Franciscan Ceramics, Inc., 818 F.2d 1466, 1468 (9th Cir. 1987) (citing Matsushita Elec. Indus. Co., 475 U.S. at 587).  Accord Addisu, 198 F.3d at 1134 ("There must be enough doubt for a 'reasonable trier of fact' to find for plaintiffs in order to defeat the summary judgment motion.").

All evidence and inferences must be construed in the light most favorable to the nonmoving party.  T.W. Elec. Serv., Inc., 809 F.2d at 631.  Inferences may be drawn from underlying facts not in dispute, as well as from disputed facts that the judge is required to resolve in favor of the nonmoving party. Id.  When "direct evidence" produced by the moving party conflicts with "direct evidence" produced by the party opposing

9

summary judgment, "the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact." Id.

IV.     **THE COURT DECLINES TO STAY THIS ACTION PENDING THE OUTCOME OF THE STATE-COURT DECLARATORY RELIEF INSURANCE COVERAGE CLAIMS.**

This court begins by examining whether it should reach the merits of the insurance coverage issues before it, given the coverage case pending in state court.  The plaintiff in that case, a storage facility defendant in the Liability Suits, seeks a defense and indemnification from Endurance.  Endurance, three days before the lawsuit now before this court was filed, filed a third-party complaint in state court against VSE, seeking a declaration that it owed VSE neither a duty to defend nor a duty to indemnify with respect to the Liability Suits.

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." Landis v. N. Am. Co., 299 U.S. 248, 254 (1936).  See Leyva v. Certified Grocers of Cal., Ltd., 593 F .2d 857, 864 (9th Cir. 1979) ("[T]he court may order a stay of [an] action pursuant to its power to control its docket and calendar and to provide for a just determination of the cases pending before it.").  In addition, "the Declaratory Judgment Act has been understood to confer on federal courts unique and

substantial discretion in deciding whether to declare the rights

of litigants." Wilton v. Seven Falls Co., 515 U.S. 277, 286

(1995).

> Consistent with the nonobligatory nature of
> the remedy, a district court is authorized,
> in the sound exercise of its discretion, to
> stay or to dismiss an action seeking a
> declaratory judgment before trial or after
> all arguments have drawn to a close.  In the
> declaratory judgment context, the normal
> principle that federal courts should
> adjudicate claims within their jurisdiction
> yields to considerations of practicality and
> wise judicial administration.

Id. at 288 (footnote omitted).

That discretion, however, is not unfettered.  See Gov't

Emps. Ins. Co. v. Dizol, 133 F.3d 1220, 1223 (9th Cir. 1998) (en

banc).  Guidance on whether to stay an insurance coverage action

pending resolution of an underlying state court action is

provided by Brillhart v. Excess Insurance Co. of America, 316

U.S. 491 (1942), and its progeny.

In Brillhart, the Supreme Court stated that it would

ordinarily

> be uneconomical as well as vexatious for a
> federal court to proceed in a declaratory
> judgment suit where another suit is pending
> in a state court presenting the same issues,
> not governed by federal law, between the same
> parties.  Gratuitous interference with the
> orderly and comprehensive disposition of a
> state court litigation should be avoided.

<u>Brillhart</u>, 316 U.S. at 495.  <u>Brillhart</u> set forth a nonexhaustive

list of factors to be considered in determining whether to stay

or dismiss a federal court Declaratory Judgment Act case:

> Where a district court is presented with a
> claim such as was made here, it should
> ascertain whether the questions in
> controversy between the parties to the
> federal suit, and which are not foreclosed
> under the applicable substantive law, can
> better be settled in the proceeding pending
> in the state court.  This may entail inquiry
> into the scope of the pending state court
> proceeding and the nature of defenses open
> there.  The federal court may have to
> consider whether the claims of all parties in
> interest can satisfactorily be adjudicated in
> that proceeding, whether necessary parties
> have been joined, whether such parties are
> amenable to process in that proceeding, etc.

<u>Id.</u>

"The <u>Brillhart</u> factors remain the philosophic

touchstone for the district court.  The district court should

avoid needless determination of state law issues; it should

discourage litigants from filing declaratory actions as a means

of forum shopping; and it should avoid duplicative litigation."

<u>Dizol</u>, 133 F.3d at 1225 (citation omitted).  The following

additional factors are sometimes considered:

> whether the declaratory action will settle
> all aspects of the controversy; whether the
> declaratory action will serve a useful
> purpose in clarifying the legal relations at
> issue; whether the declaratory action is
> being sought merely for the purposes of
> procedural fencing or to obtain a "res
> judicata" advantage; or whether the use of a
> declaratory action will result in

entanglement between the federal and state
        court systems.

Id. at 1225 n.5 (quoting Am. States Ins. Co. v. Kearns, 15 F.3d

142, 145 (9th Cir. 1994) (J. Garth, concurring)) (some quotation

marks omitted).  District courts might also consider "the

convenience of the parties, and the availability and relative

convenience of other remedies."  Id. (quoting Kearns, 15 F.3d at

145 (Garth, J., concurring)).

        When there are parallel state proceedings, "there is a

presumption that the entire suit should be heard in state court."

Id. at 1225.  However, the existence of a state-court action does

not automatically bar a request for federal declaratory relief.

Id.  "[T]here is no presumption in favor of abstention in

declaratory actions generally, nor in insurance coverage cases

specifically."  Id.

        This court declines to stay this case in favor of the

state-court action in which Endurance has filed a third-party

complaint seeking a declaration that it has no duty to defend or

indemnify VSE with respect to the claims in the Liability Suits.

Although those coverage issues overlap the issues in this action,

this case does not involve all of the same issues and parties.

        First, the present case involves only the duty to

defend.  Any reference in the present case to indemnification is

a reference to indemnification for defense costs, not for any

judgment that might be entered against an insured in the
Liability Suits.

Second, here, Charter Oak, VSE's insurer, as opposed to
VSE itself, is seeking declaratory relief. VSE is not a party in
the case before this court.

Third, the present action involves a claim that the
Endurance policy is "primary" to the Charter Oak policy. See
Complaint, ECF No. 1, PageID # 11 ("Charter Oaks seeks a judicial
determination of the rights and duties of itself on the one hand
and Endurance on the other hand . . . , including but not limited
to the following issues: . . . B. Whether Endurance's duty to
defend VSE in the Underlying Actions is primary to Charter
Oak's").

Because not all of the issues or parties in this case
are identical to issues in the state-court action, this case is
not entirely "parallel" to the state-court case.

Nor does this case appear to involve a needless
determination of state law. Instead of turning on unsettled
issues of state law, the coverage issues raised by the present
motion appear to turn on factual issues. See Allstate Ins. Co.
v. Davis, 430 F. Supp. 2d 1112, 1120 (D. Haw. 2006). In
particular, as discussed in greater detail later in this order,
exactly how the fatal explosion occurred will affect whether
policy provisions apply.

Although the complaint commencing the lawsuit in state court was filed by a storage company on August 23, 2013, about two months before the Complaint in the present action was filed on October 24, 2013, the third-party complaint in which Endurance raised the issue of any obligation owed to VSE was filed on October 21, 2013, only three days before Charter Oak commenced the present action against Endurance. Nothing in the record establishes that Charter Oak even knew about Endurance's third-party complaint in state court at the time Charter Oak filed the Complaint in this case. This court has no basis for concluding that the present case was filed to obtain a "res judicata" effect or to "forum shop."

The parties have not informed this court what progress has been made in state court. This court understands that, if it allows the case before it to proceed, Endurance will have to litigate coverage disputes with different parties simultaneously in state and federal court. That burden, however, is likely to be short-lived. This court's determination in this order that Endurance has a duty to defend VSE leaves little for further adjudication in this district court. The court also notes that any inconvenience is not geographic; the state-court action is proceeding in a building right across the street from this court. Moreover, any inconvenience inflicted on Endurance by having to litigate in two separate courts would be at least matched by the

inconvenience Charter Oak would suffer if this court were to abstain, forcing Charter Oak to attempt to join the state-court action, file a separate declaratory action in state court, or face uncertainty about its obligations for the duration of the state-court action.

V.     **ENDURANCE HAS A DUTY TO DEFEND VSE, WHICH INCLUDES A DUTY TO REIMBURSE CHARTER OAK FOR THE REASONABLE DEFENSE COSTS INCURRED IN DEFENDING VSE FROM THE LIABILITY SUITS.**

   A.     **General Law Concerning Insurance Policies.**

This is a diversity action.  See Complaint, ECF No. 1, PageID # 2.  Federal courts sitting in diversity apply state substantive law and federal procedural law.  See Snead v. Metro. Prop. & Cas. Ins. Co., 237 F.3d 1080, 1090 (9th Cir. 2001).  When interpreting state law, a federal court is bound by the decisions of a state's highest court.  Ariz. Elec. Power Coop. v. Berkeley, 59 F.3d 988, 991 (9th Cir. 1995).  In the absence of such a decision, federal courts attempt to predict how the highest state court would decide the issue, using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance.  Id.; see also Burlington Ins. Co. v. Oceanic Design & Constr., Inc., 383 F.3d 940, 944 (9th Cir. 2004) ("To the extent this case raises issues of first impression, our court, sitting in diversity, must use its best judgment to predict how the Hawaii Supreme Court would decide the issue." (quotation and brackets omitted)).

16

Under Hawaii law, general rules of contract construction apply to the interpretation of insurance contracts. Dawes v. First Ins. Co. of Haw., 77 Haw. 117, 121, 883 P.2d 38, 42 (1994). Insurance policies must be read as a whole and construed in accordance with the plain meaning of its terms, unless it appears that a different meaning is intended. Id. at 121, 883 P.2d at 42; First Ins. Co. of Haw. v. State, 66 Haw. 413, 423, 665 P.2d 648, 655 (1983); see also Haw. Rev. Stat. § 431:10-237 (Michie 2011) ("[e]very insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy").

Because insurance contracts are contracts of adhesion, they must be construed liberally in favor of the insured, and any ambiguities must be resolved against the insurer. Put another way, the rule is that policies are to be construed in accordance with the reasonable expectations of a layperson. Tri-S Corp. v. W. World Ins. Co., 110 Haw. 473, 489, 135 P.3d 82, 98 (2006) (citations omitted); Dawes, 77 Haw. at 131, 883 P.2d at 42.

This court is concerned here with whether Endurance has a duty to defend VSE. The duty to defend arises when there is any potential or possibility for coverage. Sentinel Ins. Co. v. First Ins. Co. of Haw., 76 Haw. 277, 287, 875 P.2d 894, 904 (1994) (as amended on grant of reconsideration). "In other words, the duty to defend rests primarily on the possibility that

coverage exists.  This possibility may be remote, but if it exists, the insurer owes the insured a defense."  Id. (alterations, quotation marks, and citations omitted).  Any doubt as to the duty to defend "is resolved against the insurer and in favor of the insured."  Id. (citation omitted).

However, when the pleadings fail to allege any basis for recovery under an insurance policy, the insurer has no duty to defend.  Pancakes of Haw. v. Pomare Props., 85 Haw. 286, 291, 944 P.2d 83, 88 (1997).  For this court to conclude that Endurance has no duty to defend VSE from the Liability Suits, the court must determine that it would be impossible for a claim in the underlying Liability Suits to be covered by Endurance's insurance policy.  See Dairy Road Partners, 92 Haw. at 412-13, 922 P.2d at 107-08.

Because the duty to defend turns on the possibility of coverage, this court looks at how coverage is determined.  The burden is on the insured to establish coverage under an insurance policy.  See Sentinel, 76 Haw. at 291 n.13, 875 P.2d at 909 n.13. The insurer has the burden of establishing the applicability of an exclusion.  See id. at 297, 875 P.2d at 914.

The duty to indemnify is owed "for any loss or injury which comes within the coverage provisions of the policy, provided it is not removed from coverage by a policy exclusion." Dairy Road Partners v. Island Ins., 92 Haw. 398, 413, 922 P.2d

18

93, 108 (2000).  The obligation to defend an insured is broader
than the duty to indemnify.

> **B.    Endurance has a Duty to Defend VSE under the
>         Comprehensive General Liability Insurance Coverage
>         Issued to Donaldson.**

Charter Oak seeks a determination that Endurance has a
duty to defend VSE under the Comprehensive General Liability
Coverage of the policy Endurance issued to Donaldson, under which
VSE was an "additional insured."  While Endurance argues that it
owes no duty to VSE under other coverages provided by that
policy, those arguments are irrelevant to the present motion.[1]

There is no dispute that the Liability Suits assert
claims of "bodily injury" arising out of an "occurrence" (an
accident) during the "policy period" for purposes of the
Comprehensive General Liability Coverage of the policy Endurance
issued to VSE.  Endurance instead argues that VSE is not an

---

[1]Endurance argues that there is no coverage under the
policy's Professional Liability Coverage because Endorsement
Number 5 does not make VSE an "additional insured" with respect
to that coverage.  Endurance also argues that it owes no duty
under the Contractor's Pollution Liability Coverage because the
policy excludes from coverage intentional, willful, and
deliberate noncompliance with statutes, regulations, ordinances,
etc.  Endurance further argues that, under the Contractor's
Pollution Coverage, there is a limit for "claims expenses," and
that defense fees should be shared on a "pro rata" basis.  If
this court concludes that Endurance owes VSE a duty to defend
under the Comprehensive General Liability Coverage, the issue of
whether a duty to defend is or is not owed under other parts of
Endurance's policy need never be reached.  In any event, no one
is asking the court to find any duty under those other coverages
at this time.

"additional insured" and that, even if it is, Endurance owes VSE
no duty to defend because coverage is excluded by the "pollution"
exclusion.  The court is not persuaded by Endurance's arguments.

1.    **VSE is an Additional Insured Under the**
      **Comprehensive General Liability Coverage.**

Although VSE is indisputably named as an "additional
insured" for purposes of Endorsement Number 5, Endurance argues
that it owes no duty to VSE as an "additional insured" because
that endorsement applies only to claims of vicarious liability
arising out of Donaldson's ongoing operations.  Endurance
contends that the Liability Suits state no claim for such
vicarious liability.  This court disagrees.

Section 59 of the Restatement (Third) of Torts
discusses the vicarious liability of a person who hires an
independent contractor to perform an activity that poses a
peculiar risk.  That section states:

> An actor who hires an independent contractor
> for an activity that the actor knows or
> should know poses a peculiar risk is subject
> to vicarious liability for physical harm when
> the independent contractor is negligent as to
> the peculiar risk and the negligence is a
> factual cause of any such harm within the
> scope of liability.

Illustration 3 of that section states:

> The County hires a private prisoner
> transportation service to move several
> prisoners from one prison to another.  The
> van provided by the service is designed with
> four separately locked cells; each cell holds
> up to three prisoners.  The lock on one of

the cells does not function properly due to
careless maintenance by the service.  A
prisoner riding in the cell works open the
lock, breaks out of the cell, and tries to
overpower the driver; the van crosses several
lanes of traffic and hits another vehicle,
injuring the other driver.  Leaving aside
possible issues of immunity, the County is
subject to vicarious liability to the other
driver under this Section because
transporting prisoners is an activity that
poses a peculiar risk.

The Liability Suits allege that Donaldson was hired by

VSE "to warehouse, store, transport, dismantle and dispose of

fireworks and other explosives seized by the government."  ECF

No. 23-4, PageID # 325.  The complaints in the Liability Suits

allege that VSE is liable for its own negligence, as well as for

the negligence of its employees, agents, and/or representatives.

Id.  Protected from employees' negligence suits by Hawaii's

worker's compensation law, Donaldson is not named as a defendant

in the Liability Suits.  Nevertheless, the question of whether

any Donaldson employees were VSE's "employees, agents, and/or

representatives" is at least arguable on the record before this

court.  Accordingly, the court reads the complaints in the

Liability Suits as asserting claims based on the acts and/or

omissions of Donaldson employees that the plaintiffs in those

actions appear to be alleging VSE is vicariously liable for.

This assertion, if viewed as consistent with section 59 of the

Restatement (Third) of Torts, concerns more than simple, direct

negligence on the part of VSE.

The court recognizes that reading the complaints in the Liability Suits as including vicarious liability assertions risks reading the complaints as alleging that Donaldson employees themselves committed negligent acts that VSE is vicariously liable for. It would, of course, be anomalous for any plaintiff to allege a plaintiff's own contributory or comparative negligence in a complaint. But that is not the only reading that would give meaning to a vicarious liability claim. The plaintiffs in the Liability Suits could be alleging that VSE is vicariously liable for the acts of Donaldson actors other than themselves.

Interestingly, Endurance has included in the record before this court a report by the U.S. Chemical Safety and Hazard Investigation Board, which conducted an investigation following the fatal explosion. The reports noted that the Bureau of Alcohol, Tobacco, Firearms and Explosives had concluded:

> that the explosion was likely triggered when loose explosive pyrotechnic powder, initially generated as the fireworks were disassembled outside, spilled or leaked from the boxes onto the storage magazine floor and was ignited due to a friction or a metal-to-metal spark as [Donaldson] employees moved materials around inside the magazine.

ECF No. 26-14, PageID # 975. The same report concluded that VSE had not had personnel with the necessary background and expertise to recognize the hazards associated with Donaldson's fireworks disposal and had deferred to Donaldson's expertise. Id., PageID

22

# 993.  The report noted that it was Donaldson that had

"developed a fireworks disposal methodology that evolved into

disassembling seized fireworks and separating and accumulating

their explosive components--black powder and aerial shells--into

cardboard boxes."  Id., PageID # 1004.  This "created a much

larger explosive hazard than the original fireworks represented."

Id.

The court is not called upon to determine what actually

happened and is certainly not undertaking that task here.  Nor is

the court suggesting that vicarious liability should attach.

Referring above to the discussion in the report, the court seeks

only to show that, not only is reading the complaints in the

Liability Suits as asserting vicarious liability claims against

VSE consistent with the language of those pleadings, it is

consistent with inferences in other materials in the record.

## 2.    Endurance Fails to Demonstrate that the Policy's Pollution Exclusion Applies.

The court turns next to the policy's pollution

exclusion.  See Policy, ECF No. 23-2, PageID # 289.  That

exclusion states that coverage is excluded for

> "Bodily injury" or "property damage" arising
> out of the actual, alleged or threatened
> discharge, dispersal, seepage, migration,
> release or escape of "pollutants" . . . [a]t
> or from any premises, site or location which
> is or was at any time used by or for any
> insured or others for the handling, storage,
> disposal, processing or treatment of waste.

See copy of policy attached to Concise Statement of Endurance, ECF No. 26-9, PageId # 782-83.  The policy defines "Pollutants" as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.  Waste includes materials to be recycled, reconditioned or reclaimed."  ECF No. 23-2, PageID # 296.

Arguing that the fireworks qualify as "waste," Endurance says that the explosion was an "actual . . . discharge of 'pollutants'" that caused bodily harm and that such harm falls under the pollution exclusion contained in the policy.  The burden is on Endurance to establish the applicability of the pollution exclusion.  See Sentinel, 76 Haw. at 297, 875 P.2d at 914.  This court is unpersuaded that the pollution exclusion so clearly applies that Endurance is relieved of even the duty to defend.

If this were VSE's motion seeking to establish Endurance's duty to defend, VSE, as the insured, would only have to establish a possibility that the claims against it were covered.  See Dairy Road Partners, 92 Haw. at 413, 922 P.2d at 108.  Even with Charter Oak as the movant, this court concludes that Endurance may not rest on the pollution exclusion as relieving it of a duty to defend VSE, given the possibility that the exclusion is inapplicable.

The California Supreme Court examined a pollution exclusion in detail in MacKinnon v. Truck Insurance Exchange, 73

24

P.3d 1205 (Cal. 2003).  That case involved an insurer's
contention that the pollution exclusion in a comprehensive
general liability insurance policy issued to an apartment owner
excluded coverage for claims against the owner for the death of a
tenant caused by the spraying of a pesticide intended to
eradicate yellow jackets in the apartment building.  Id. at 1207.
Noting that the scope of the pollution exclusion had been
"litigated extensively in other jurisdictions," the court
remarked, "To say there is a lack of unanimity as to how the
clause should be interpreted is an understatement."[2]  Id. at
1208.

        The California Supreme Court determined that the
insurer's contention would lead to "absurd results" and ignore
"the familiar connotations of the words used in the exclusion."
Id. at 1216.  The policy at issue in that case, like Endurance's
policy, defined "pollutant" as "any solid, liquid, gaseous or
thermal any irritant or contaminant, including smoke, vapor,

────────────────

        [2]In Group Builders, Inc. v. Admiral Insurance Company,
2013 WL 1579600, *10 (Haw. Ct. App. Apr. 15, 2013), the Hawaii
Intermediate Court of Appeals noted that the insurer owed a duty
to defend "because the courts were split as to whether
construction defect claims constituted an 'occurrence' under a
CGL policy."  This is not a position that has been articulated by
the Hawaii Supreme Court.  On the present motion, this court need
not examine whether, because it raises the possibility of
coverage, a split of authority automatically triggers a duty to
defend.  See Sentinel, 76 Haw. at 287, 875 P.2d at 904 (insurer
owes duty to defend if there is any possibility of coverage and
any doubt must be resolved in favor of insured).  There are
grounds independent of any split that require Endurance to
provide VSE with a defense.

soot, fumes, acids, alkalis, chemicals and waste materials." Id. at 1207. Quoting Regional Bank of Colorado v. St. Paul Fire and Marine Insurance Company, 35 F.3d 494 (10th Cir. 1994), the court noted that a reasonable policy holder would not have understood the policy to exclude coverage for "anything that irritate[d]." Instead, the court reasoned that "irritant" had to be "construed in the context of how it is used in the policy, i.e., defining 'pollutant.'" Id. at 1216. The court relied on the following statement from Regional Bank of Colorado:

> While a reasonable person of ordinary intelligence might well understand carbon monoxide is a pollutant when it is emitted in an industrial or environmental setting, an ordinary policyholder would not reasonably characterize carbon monoxide emitted from a residential heater which malfunctioned as "pollution." It seems far more reasonable that a policyholder would understand it as being limited to irritants and contaminants commonly thought of as pollution and not as applying to every possible irritant or contaminant imaginable.

MacKinnon, 73 P.2d at 1216 (quoting 35 F.3d at 498).

The MacKinnon court limited the pollution exclusion to injuries arising from events commonly thought of as pollution, "i.e. environmental pollution." Id. With the term so limited, the court concluded that the pollution exclusion did not exclude coverage for the wrongful death claims arising out of the spraying of a pesticide. Id. at 1218.

In the District of Hawaii, at least two federal judges have interpreted Hawaii law as diverging from the articulation of

26

California law in <u>MacKinnon</u>.  In <u>Apana v. TIG Insurance Company</u>, 504 F. Supp. 2d 998 (D. Haw. 2007), Judge J. Michael Seabright determined that the pollution exclusion at issue in that case excluded coverage for injuries caused when a plumber "poured an extremely strong drain cleaner down the maintenance drain, releasing noxious fumes" at a Wal-Mart store.  <u>Id.</u> at 1001 and 1006.  Judge Seabright ruled that the insurer had no duty to indemnify, predicting that the Hawaii Supreme Court would find that the discharge of an extremely strong drain cleaner into the air falls within the pollution exclusion "under a plain, common, and ordinary understanding."  <u>Id.</u> at 1006.  Judge Seabright rejected any limitation of the pollution exclusion to environmental pollution, given the absence of such a limitation in the exclusion itself.  <u>Id.</u>  Judge Seabright, did however, note that the interpretation of the pollution exclusion under the facts in that case involved "an open question under Hawaii law." <u>Id.</u> at 1004.  Adopting the notion that uncertainty about the law triggers a duty to defend, he ruled that the insurer had a duty to defend its insured given the possibility that the insured was entitled to indemnification.  <u>Id.</u>

In <u>Allen v. Scottsdale Insurance Company</u>, 307 F. Supp. 2d 1170 (D. Haw. 2004), Judge David Alan Ezra similarly applied a pollution exclusion to exclude coverage under an insurance policy.  In that case, the issue of insurance coverage concerned claims of allergic reactions and other physical and emotional

injuries caused by the escape of concrete dust from a concrete recycling plant.  Id. at 1172.  Like Judge Seabright in Apana, Judge Ezra concluded that the pollution exclusion was unambiguous and that concrete dust qualified as a "pollutant."  Id. at 1176-78.  However, he concluded that the insurer lacked even a duty to defend its insured.  Id. at 1179.

Because only the duty to defend is at issue in the case before this court, this court need not decide whether the pollution exclusion actually applies here.  This court only needs to determine whether coverage is possible, i.e., whether there is a possibility that the exclusion is inapplicable.  See Dairy Road Partners, 92 Haw. at 412-13, 922 P.2d at 107-08.  Unlike in Apana and Allen, this case does not clearly involve something that is a "pollutant."  Of course, like the drain cleaner in Apana, fireworks are inherently dangerous.  Fireworks might be considered hazardous waste on their own, but it was not the fireworks themselves that caused the injury.  Unlike the drain cleaner (or the dust in Allen), fireworks can sit out exposed without necessarily emitting fumes, causing irritation, or generating what a layperson would consider pollution.

Even if the court looks at the flammable components of the fireworks, not at the manufactured fireworks, the mere presence of those components did not cause any irritation or contamination, so it is not clear that the components fit the definition of "pollutants" for purposes of this case.

"Pollutants" are defined as "any solid, liquid, gaseous or thermal irritant or contaminant." ECF No. 23-2, PageID # 296. Endurance points out that the definition goes on to say "including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed." Id. According to Endurance, because what Donaldson was destroying should qualify as "waste," it also qualifies as a "pollutant." This court reads the words following "including" as examples of "irritants" or "contaminants." That is, "waste" cannot be a "pollutant" without being an "irritant" or "contaminant." Because "waste" does not expand the definition of "pollution" beyond "irritants" and "contaminants," some forms of "waste" (i.e., waste that is nether an "irritant" nor a "contaminant") may not necessarily be "pollutants." Thus, while "vapor" is part of the list that includes "waste," not all "vapors" are "pollutants." Water vapor, when it is not an "irritant" or "contaminant," would not be a "pollutant."

Even if pollutants could be said to be unquestionably involved here, the possibility remains that the pollution exclusion is inapplicable and that coverage is available under Endurance's policy. The components might not have caused the injuries at the heart of the Liability Suits had they not ignited. Unlike a coverage provision, an exclusion is read narrowly. See Island Ins. Co. v. Arakaki, 2010 WL 2414924, *6

(Haw. Ct. App. June 16, 2010) ("Hawai`i courts construe the exclusions in policies narrowly.");[3] see also Fortune v. Wong, 68 Haw. 1, 10, 702 P.2d 299, 305 (Haw. 1985) (approving general proposition that insurance policies are construed broadly and exclusions are construed narrowly). The pollution exclusion provides for exclusion of coverage for bodily injury arising out of the "discharge, dispersal, seepage, migration, release or escape" of pollutants. Even if the fatal explosion could be said to have "arisen out of" the presence of the fireworks or their components, and even if the fireworks or their components were "pollutants," it is not at all clear that, in the Liability Suits, VSE is being sued in connection with an explosion allegedly arising out of "the discharge, dispersal, seepage, migration, release or escape" of pollutants.

For example, in paragraph 25 of the complaint filed in the Cabalce case, the plaintiffs in that case allege:

> 25. VSE failed its safety
> responsibilities in, among other things,
> allowing the disposal of explosives and fireworks in the same
> location where the explosives and fireworks were being stored;
> the use of tools which could cause ignition and/or explosion of
> the explosives and fireworks; the use of equipment such as pumps
> powered by electrical motors which could cause ignition and/or
> explosion of the explosives and fireworks; the storing and
> disposal of explosives and fireworks in an environment that was
> susceptible to static electricity which could cause ignition
> and/or explosion of the explosives and fireworks; storing and
> dismantling explosives and fireworks in the same location where

---

[3]After July 1, 2008, any disposition of the Hawaii courts, including unpublished opinions, may be cited in any proceeding. Such unpublished dispositions "are not precedent, but may be cited for persuasive value." Haw. R. App. P. 35(c).

other flammable and explosive materials such as diesel oil were also being kept or used; dismantling fireworks and explosives in a confined space; using a flammable material such as diesel oil to dismantle the fireworks and explosives; and/or conducting storage and dismantling operations of explosives and fireworks without an adequate safety plan, analysis and/or warnings.

ECF No. 23-4.

Static electricity and sparks from electrical equipment are cited as possibly having ignited the fireworks or fireworks components. If the fireworks exploded after catching on fire via static or an equipment spark, it is difficult to see how the "discharge, dispersal, seepage, migration, release or escape" of pollutants could be said to have caused the death of Donaldson employees, even assuming the fireworks or the fireworks components are pollutants.

This court stresses that it is not here opining on the cause of the explosion. Rather, the court is confining itself to examining what VSE is being sued for, and comparing those claims to what is covered and what is excluded. That examination and comparison do not permit the conclusion that the existence of the pollution exclusion leaves no possibility of coverage. Endurance therefore owes VSE a duty to defend it in the Liability Suits notwithstanding the pollution exclusion.

### C.    Endurance's Insurance Policy is "Primary."

Having determined that Endurance owes a duty to defend VSE, the court turns to the relationship between the Endurance and Charter Oak policies. Endorsement Number 16 to Endurance's

31

policy states that "it is hereby agreed that this policy shall be considered primary to any similar insurance held by third parties in respect to work performed by you [Donaldson] under any written contractual agreement with such third party."  See ECF No. 23-2, PageID # 309.  Under this provision, Endurance's obligation to defend and indemnify VSE under its policy is "primary" to Charter Oak's obligation.

Endurance argues that, instead of being primarily responsible for those costs under Endorsement Number 16, it need only share defense costs.  In that regard, Endurance points to the Contractor's Pollution Liability Coverage, which states,

> K. OTHER INSURANCE
>
> If any part of either *damages* or *claims expenses* is insured under this Policy and any other current, prior or subsequent Policy, the Policy shall provide coverage for such *damages* or *claims expenses* on a pro rata basis with such other Policy according to the applicable Limits of Liability of this Policy and such other Policy.

As noted above, the Contractor's Pollution Liability Coverage is not at issue on this motion, and the Comprehensive General Liability Coverage provisions contain no analogous pro rata provision.

## VI.       ENDURANCE'S RULE 56(d) REQUEST IS DENIED.

At the hearing on the motion, Endurance requested a continuance of this motion pursuant to Rule 56(d) of the Federal Rules of Civil Procedure, claiming that it needed to conduct

discovery as to the cause of the explosion.  That request is
denied.

Endurance submitted no affidavit or declaration
explaining why, without discovery, it could not present facts
essential to justifying its opposition.  Such an explanation is
required by Rule 56(d).  Moreover, it is not clear how discovery
into the cause of the explosion would affect this court's
determination as to whether Endurance has a duty to defend VSE
from the Liability Suits.  The claims in the complaints filed in
the Liability Suits control whether a duty to defend is
triggered, regardless of whether those claims are ultimately
proven to be meritorious.

**VII.     CONCLUSION.**

Partial summary judgment is granted in favor of Charter
Oak.  Endurance owes VSE a duty to defend VSE from the Liability
Suits, and Endurance's policy is "primary" to Charter Oak's
policy.  Endurance must reimburse Charter Oak for reasonable
amounts spent defending VSE.  The court does not here decide what
amount is reasonable.  Endurance is ordered to begin providing
VSE with a defense forthwith.

If the parties anticipate asking the court to determine
the amount that Endurance must reimburse Charter Oak for, a
motion seeking that determination must be filed no later than
September 30, 2014.  Before filing any such motion, the parties

must meet and confer in an attempt to agree as to amounts and/or particular issue(s).

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, August 20, 2014.



/s/ Susan Oki Mollway
Susan Oki Mollway
Chief United States District Judge

The Charter Oak Fire and Insurance Company v. Endurance American Specialty Insurance Company, Civ. No. 13-00558 SOM/BMK; ORDER GRANTING MOTION FOR PARTIAL SUMMARY JUDGMENT